**GROSECLOSE v. PLUMMER, Warden, et al.**

No. 9085.

Circuit Court of Appeals, Ninth Circuit.

Aug. 28, 1939.

Morris Lavine, of Los Angeles, Cal., for petitioner.

Earl Warren, Atty. Gen., State of California and William F. Cleary, Deputy Atty. Gen., for respondents.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The petition for rehearing is denied. However, since petitioner has stressed certain claims in his petition for rehearing which we did not treat at length in our opinion affirming the decision of the district court, we now withdraw and strike the original opinion and substitute therefor the following:

Petitioner is confined in a California penitentiary under the authority of a commitment from the Superior Court of the State of California based upon petitioner's conviction in such court of three offenses of grand theft (Calif.Penal Code § 487) and of being an habitual criminal (Calif. Penal Code § 644). After incarceration he has claimed that the detention is illegal and has unsuccessfully prosecuted his contentions through the State courts, including the State Supreme Court, by the writ of habeas corpus, but no appeal was taken from the decision of the latter court. He followed such efforts by applying to the United States District Court for the issue of the writ of habeas corpus in substantially the same form as in the State court. The District Court denied the application, and we now have petitioner's appeal from such order before us for determination.

We used the following language in a recent opinion (Palmer v. McCauley, 9 Cir., 103 F.2d 300, April 18, 1939), and believe that it exactly fits this case: "We need not go into the merits of the controversy for it is well settled that whether or not a federal court will issue a writ of habeas corpus to release a prisoner held under a commitment from a state court is one of discretion. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868; Ex parte Fonda, 117 U.S. 516, 6 S.Ct. 848, 29 L.Ed. 994; Wood v. Brush, 140 U.S. 278, 11 S.Ct. 738, 35 L.Ed. 505. That discretion should be exercised in the light of the principles announced by the Supreme Court in Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760, wherein it is held that the appropriate way to raise questions involving the validity of a commitment under a state law is by application to the state courts, and if denied by appeal to the Supreme Court of the United States. Ex parte Melendez, 9 Cir., 1938, 98 F.2d 791; Ex parte Penney, 9 Cir., 103 F.2d 27, March 24, 1939. There are no exceptional circumstances involved in the instant case which would justify the interposition of the District Court."

The doctrine of Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760, was reaffirmed by the Supreme Court in Ex parte Howard Lee, 303 U.S. 624, 58 S. Ct. 742, 82 L.Ed. 1086.

Petitioner asserts, however, that the trial court was without jurisdiction to sentence petitioner under the California habitual criminal act, and that, therefore, the trial court should have granted the writ.

Applying the Urquhart case to the situation confronting us, we are of the opinion that the factual basis of this case does not bring it within the principle of the exceptions in which federal courts will take original jurisdiction of petitions for writs of habeas corpus. But even if this were not so we are unable to agree with petitioner that in denying him his liberty the State of California has refused to give full faith and credit to the laws of the

State of Texas, or that petitioner has been denied the equal protection of the law.

Prior to his trial in California, the petitioner had been twice convicted of felonies in Texas, and judgment thereon having become final, he had been incarcerated in a penitentiary under each of such convictions. In each instance, however, the Governor had pardoned him before the expiration of the sentence imposed. Neither pardon was based upon a finding of innocence. Notwithstanding the pardons, evidence of the Texas convictions was admitted in the California court and, indeed, was essential to the verdict reached therein that he was an habitual criminal. California Penal Code § 644.

It is petitioner's contention that these pardons under Texas law wiped out the convictions as thoroughly as though they had never occurred, and that, therefore, giving full faith and credit to the law, no fact as to prior convictions existed.

This is the same as saying that executive clemency clears the boards as thoroughly as the granting of a new trial and subsequent acquittal would do. It is true that some expressions are to be found in judicial opinions and in legal text-books which would seem to support this idea. See People v. Biggs and Groseclose, 9 Cal.2d 561, 71 P.2d 214, 116 A.L.R. 205. However, we see the great weight of authority supporting the more realistic view that a pardon, to the extent of its terms, does nothing more than to abolish all restrictions upon the liberty of the pardoned one, and upon his civil rights that follow a felony conviction and sentence. As to what effect a pardon would have based upon the discovery of absolute innocence of crime we need not here consider, for the text of each pardon in this case assumes the guilt of the petitioner.

It may be true (we do not so hold) that the Texas pardon law goes all the way and prohibits the Texas courts from giving any consideration to a pardoned offense. Yet such a law could not turn back the hand of time long enough to delete an actuality from its long course. It still remains true that petitioner was the subject of two prior final convictions when the law of California overtook him in the commission of another felony. Notwithstanding the Texas pardons, the stubborn fact remains that the *habit* of crime was upon him. The executive clemency of one state could not, under any law of such state,

prevent a sister state from taking cognizance of plain facts, and from applying its police laws to them.

These principles are conclusively established in the case of Carlesi v. People of New York, 233 U.S. 51, 34 S.Ct. 576, 578, 58 L.Ed. 843, wherein the authorities are collated. The following quotation from McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542, is cited with approval in the Carlesi case and it is apropos here:

"The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire.

"But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime for not less than three years, in this or in another state, or once in each. The punishment is for the new crime only, but is the heavier if he is an habitual criminal. * * * It is within the discretion of the legislature of the state to treat former imprisonment in another state as having the like effect as imprisonment in Massachusetts, to show that the man is an habitual criminal. * * * The statute, imposing a punishment on none but future crimes, is not ex post facto. It affects alike all persons similarly situated, and therefore does not deprive anyone of the equal protection of the laws. Moore v. Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301; Ross's Case, 2 Pick. [Mass.], 165; Com. v. Graves, 155 Mass. 163, 29 N. E. 579, 16 L.R.A. 256; Sturtevant v. Com., 158 Mass. 598, 33 N.E. 648; Com. v. Richardson, 175 Mass. 202, 55 N.E. 988."

In presenting his argument that he is denied equal protection of the laws, petitioner says: "the vice of the law is that if a person were pardoned in the State of California, the effect of the pardon would be to wipe out the prior conviction, and the person thus pardoned in California by reason of that fact would receive a lesser and different punishment than one pardoned in the State of Texas." The structure falls through faulty foundation—the authorities do not support the premise that a final conviction for felony in California, though pardoned, could not be considered in a case

where the California habitual criminal statute is sought to be applied. Petitioner cites the case of People v. Dutton, 9 Cal.2d 505, 71 P.2d 218, 219, on this point. The cited California case presents the following fact situation and comments upon petitioner's contentions:

"Defendant was charged with the violation of section 476a of the Penal Code, and with a prior conviction of forgery, a felony, in Wisconsin. He pleaded guilty to the crime charged, but sought to avoid the effect of the prior conviction by proof of a pardon given by the Governor of the state. The court found that he had suffered a prior conviction, and in his appeal, defendant attacks this finding, which, if it stands, requires the imposition upon defendant of a punishment heavier than that prescribed for a first offender, and renders him ineligible for probation. Pen.Code, §§ 1168 (as amended by St.1935, p. 1700), 1203 (as amended by St.1935, p. 1706).

\* \* \* \* \* \*

"Defendant next calls to our attention the act of 1933 (Stats. 1933, p. 2476) providing that where a full pardon has been granted by the Governor of this state, 'it shall operate to restore to such convicted person, all the rights, privileges and franchises of which he has been deprived in consequence of said conviction or by reasons of any matter involved therein.' The relevancy of this statute is not disclosed. It expressly applies only to pardons given by the Governor of this state, and it purports simply to remove disabilities resulting from the offense. As we have pointed out in the Biggs Case, the increased punishment provided for subsequent offenders is not an additional disability attaching to the first offense, but an appropriate penalty for the person who, after conviction of one crime, commits another."

We further quote from People v. Biggs and Groseclose, supra. Petitioner here was a defendant there [9 Cal.2d 561, 71 P.2d 216, 116 A.L.R. 205]:

"It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is 'a new man,' and 'as innocent as if he had never committed the offense,' is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction.

\* \* \* \* \* \*

"With respect to the precise question before us, namely, the effect of a prior conviction which has been pardoned, the courts are in conflict; but perhaps the weight of authority, and certainly of critical opinion, is to the effect that the pardon is immaterial, and that the defendant may be adjudged a prior offender and given the increased punishment as such."[1]

The decree of the district court is affirmed.

HANEY, Circuit Judge, concurs in the result.

---

[1] No question of innocence of the one pardoned was before the Court in the case just quoted from.