[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-12834
_____

D. C. Docket No. 1:13-cv-22230-DLG

MARSHALL LEE GORE,

Petitioner-Appellant,

versus

MICHAEL D. CREWS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 27, 2013)


Before TJOFLAT, CARNES, and HULL, Circuit Judges.

PER CURIAM:

Marshall Lee Gore was convicted and sentenced to death in Florida state

court for the first-degree murder and armed robbery of Robyn Novick.  After his

convictions and capital sentence were affirmed on direct appeal in 2001, see Gore

v. State, 784 So. 2d 418 (Fla. 2001), Gore unsuccessfully pursued post-conviction relief in both state and federal court on a host of claims, including a claim that he is mentally incompetent to be executed under Ford v. Wainwright, 477 U.S. 399 (1986). The state and federal courts rejected each of his claims for collateral relief and dismissed his Ford claim as premature because he was not then subject to an active death warrant. Gore v. Sec'y, Fla. Dep't of Corr., No. 1:06-cv-22736 (S.D. Fla. Mar. 16, 2012); Gore v. State, 24 So. 3d 1 (Fla. 2009).

That changed on May 13, 2013, when the Governor of Florida signed Gore's death warrant and scheduled his execution for Monday, June 24, 2013. See Stewart v. Martinez-Villareal, 523 U.S. 637, 644–45, 118 S.Ct. 1618, 1622 (1998) (noting that a Ford claim does not become ripe until an inmate's execution is imminent). Five days later, Gore's state-appointed collateral counsel, Steven Hammer, notified the Governor that he had reason to believe that Gore was mentally incompetent to be executed. Counsel also filed in the state circuit court a notice of a potential conflict of interest, which expressed a similar belief that Gore may be incompetent to be executed. Hammer indicated that, during a recent conversation with his client, Gore had behaved irrationally, refused to sign a release for his medical records, "made numerous statements about his distrust of counsel" and his belief that counsel was "engaged in a conspiracy to get [him] killed," and made unspecified statements about his case and imminent execution

2

that Hammer characterized as "contradictory," "bizarre," and "irreconcilably irrational."

On May 22, 2013, the Governor, as required by Fla. Stat. § 922.07, appointed a commission of three psychiatrists to evaluate Gore's mental competence to be executed and granted a temporary stay of execution pending receipt of the commission's report. The commission members conducted a three-hour clinical interview with Gore on May 28, 2013, administered several neuropsychiatric tests, reviewed his mental health and correctional records from 1990 onward, and interviewed two corrections officers about his recent behavior. During the evaluation, Gore told the commission members that there was a vast conspiracy among state officials, including the Governor of Florida, to harvest the organs of condemned prisoners for financial gain and for the benefit of elite members of society. Gore said that he believed that a state senator was waiting to obtain Gore's eyeballs for his blind son. Based on their evaluation, including the results of the neuropsychiatric tests, the commission members unanimously dismissed Gore's assertions as a patent "fabrication designed to mislead the panel and avoid responsibility for his past actions" and concluded that he has "no current mental illness," was "feigning psychopathology to avoid the death penalty," and "understands the nature and effect of the death penalty and why it was imposed on him."

3

After receiving the psychiatric commission's report, the Governor issued a formal executive order on May 30, 2013, finding Gore mentally competent to be executed, lifting the temporary stay of execution, and reinstating the original execution date of June 24, 2013. Although Gore's Ford claim had fully ripened, Hammer, his state-appointed counsel, did not seek judicial review of the Governor's competency determination under Florida Rule of Criminal Procedure 3.811, which creates a specific state mechanism for prisoners to challenge their competency to be executed. See Fla. R. Crim. P. 3.811(d) ("On determination of the Governor of Florida, subsequent to the signing of a death warrant . . ., that the prisoner is sane to be executed, counsel for the prisoner may move for a stay of execution and a hearing based on the prisoner's insanity to be executed.").

Gore's federally appointed attorney, Todd Scher, waited until 7:00 p.m. on the Friday, June 21, before the scheduled execution on the following Monday, June 24, to file a federal habeas petition under 28 U.S.C. § 2254 raising a Ford claim. He also filed an emergency motion for a stay of execution. Gore, through his counsel Scher, acknowledged that he had not satisfied the exhaustion requirement of 28 U.S.C. § 2254(b) by first presenting his Ford claim to the state courts, but he contended that his failure to exhaust his state remedies was excusable under the Supreme Court's decision in Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012),

4

because his attorney in the state proceedings had rendered ineffective assistance in failing to raise the claim in a Rule 3.811 motion.[1]

The district court dismissed Gore's habeas petition without prejudice for failure to exhaust the Ford claim in state court and, in so doing, the court rejected Gore's contention that the lack of exhaustion could be excused under Martinez. The court concluded that the rule announced in Martinez did not create an exception to § 2254(b)'s exhaustion requirement, but instead was explicitly limited to claims of ineffective assistance of trial counsel that are procedurally defaulted in

---

[1]Gore's federal habeas counsel has not adequately explained his failure to attempt to appear on behalf of Gore in state court in order to raise the competency to be executed issue.  In Howell v. State, 109 So.3d 763, 772–73 (Fla. 2013), the trial court, without any suggestion from the Florida Supreme Court that it was improper to do so, allowed counsel who was not the state registry counsel to appear in state post-conviction proceedings and participate in them on behalf of the petitioner.

During oral argument, Gore's federal habeas counsel argued that he was not obligated to appear in state court without compensation.  But Harbison v. Bell, 556 U.S. 180, 183–84, 190 n.7, 129 S.Ct. 1481, 1485, 1489 n.7 (2009), held that a district court has discretion to allow federally paid habeas counsel to appear on behalf of the petitioner in state clemency proceedings where the petitioner is otherwise unable to obtain adequate representation in those proceedings. The underlying statute covers both state court clemency proceedings and competency to be executed proceedings. See 18 U.S.C. § 3599(e) (providing that federally appointed counsel "shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available").  And here Gore is contending that he does not have adequate representation for the state competency proceedings. If, as Gore insists, his state court counsel is not providing representation adequate to exhaust his state court remedies, this would be a circumstance in which a district court could "determine, in its discretion, that it is necessary for court-appointed counsel to exhaust a claim in state court in the course of her federal habeas representation, so that counsel can go forward with her prosecution of the prisoner's federal habeas petition." Gary v. Warden, 686 F.3d 1261, 1277 (11th Cir. 2012) (alteration, citation, and quotation marks omitted).

We do not mean to imply that, but for his failure to exhaust, Gore has proffered enough evidence of incompetency to entitle him to a stay of execution based on his Ford claim.  That issue is not before us given his failure to exhaust.

5

state court due to the ineffectiveness of state post-conviction counsel. Because Gore's Ford claim, though unexhausted in state court, was not procedurally barred under state law and was not a claim of ineffective assistance of trial counsel, the district court found that Martinez was inapplicable and that the Ford claim was due to be dismissed for lack of exhaustion. The district court also denied Gore's motion for a stay of execution. It did, however, grant Gore a certificate of appealability on the sole issue of: "Whether Martinez v. Ryan created an exemption to the exhaustion requirement of 28 U.S.C. [§] 2254(b) when counsel is ineffective for failing to assert a Ford claim in state court." In granting a COA, the court found that Gore had made a "substantial showing of the denial of a constitutional right" and that reasonable jurists could debate whether he was entitled to pursue an unexhausted Ford claim in federal court pursuant to Martinez.

On the same day as the scheduled execution, June 24, Gore filed an emergency motion for a stay of execution with this Court. The State filed with us a motion to vacate the district court's COA as improvidently granted on the ground that Martinez clearly does not apply to unexhausted Ford claims. Under Eleventh Circuit Rule 22-4(a)(7), we granted a temporary stay of execution in order to prevent Gore's death mooting the appeal and directed the parties to brief a number of issues, including the sole issue upon which the district court's COA was granted. See 11th Cir. R. 22-4(a)(7) ("If a certificate of appealability is granted by

the district court or this court, the panel shall grant a temporary stay pending consideration of the merits of the appeal if necessary to prevent mooting the appeal . . . .").  We have received and considered the parties' briefs and held oral argument on the issues specified in our earlier order.

## I. Gore's Motion for a Stay of Execution

A stay of execution is an equitable remedy that "is not available as a matter of right."  Hill v. McDonough, 547 U.S. 573, 584, 126 S.Ct. 2096, 2104 (2006).  To warrant a stay of execution, an inmate must demonstrate that:  "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest."  Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011); see also Hill, 547 U.S. at 584, 126 S.Ct. at 2104 (holding that inmate seeking a stay of execution "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits").  Moreover, under Eleventh Circuit Rule 22-4(a)(7), we may deny a temporary stay of execution if, after a hearing, we find that the merits of the appeal are "frivolous, or [are] lacking any factual basis in the record, or [are] squarely foreclosed by statute, rule, or authoritative court decision."  11th Cir. R. 22-4(a)(7)(i).

7

Gore has not shown a substantial or significant likelihood of success on the merits of the sole procedural issue identified in the district court's COA. He cannot make that showing because the merits of that issue are "squarely foreclosed" by the exhaustion requirement set forth in 28 U.S.C. § 2254. Under § 2254(b), a federal court may not grant a writ of habeas corpus on a claim unless the petitioner has exhausted all available state court remedies regarding that claim. 28 U.S.C. § 2254(b). A petitioner cannot satisfy the exhaustion requirement if, with certain exceptions that are not applicable in this case, he has failed to avail himself of "any available procedure" by which he has the right to raise his claim in state court. Id. § 2254(c). If a petitioner fails to exhaust his state remedies, a district court must dismiss the petition without prejudice to allow for such exhaustion. See Rose v. Lundy, 455 U.S. 509, 519–20, 102 S.Ct. 1198, 1203–05 (1982); Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir. 2010). But see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

It is undisputed that Gore did not exhaust his Ford claim in state court before seeking federal habeas review of that claim, and he does not contend that either of the statutory exceptions, see 28 U.S.C. § 2254(b)(1)(B), are applicable. The question is whether, as Gore contends, the Supreme Court's decision in Martinez

created an exception to the exhaustion requirement where the failure to exhaust a Ford claim is alleged to have been caused by state collateral counsel's ineffective assistance. Martinez, however, clearly does not apply in the circumstances of this case because Gore's claim, though unexhausted, is not now procedurally barred, and it is not a claim that trial counsel was ineffective.

Under the doctrine of procedural default, a federal habeas court may not review the merits of a claim that is procedurally barred unless the petitioner can demonstrate cause for the default and actual prejudice, or that he is actually innocent of his crime of conviction. Ward, 592 F.3d at 1157. Before its decision in Martinez, the Supreme Court had held that a petitioner cannot rely on the ineffective assistance of post-conviction counsel to establish cause to excuse a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566 (1991).

In Martinez, however, the Court recognized a "narrow exception" to this general rule by holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315 (emphasis added). Repeatedly in its opinion, the Supreme Court emphasized the limited scope of the exception that it was crafting to the rule established in Coleman. The Court was

9

careful to characterize its decision as a "limited qualification" to Coleman's holding that negligence on the part of a prisoner's post-conviction counsel does not constitute cause to excuse the procedural default of a claim in state court. Id. at 1315–16, 1319–20. And the Court made clear in Martinez that "[t]he rule of Coleman governs in all but the limited circumstances recognized here" — namely, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding" and "counsel in that proceeding was ineffective" for failing to raise such ineffective assistance claims. Id. at 1320. The Court also underscored that the concededly "narrow exception" it was adopting was meant to "reflect[] the importance of the right to the effective assistance of trial counsel" and that its holding "addresse[d] only the constitutional claims presented in this case, where the State barred the defendant from raising the claims [of ineffective assistance of trial counsel] on direct appeal." Id.

By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel. Gore is not asserting a claim of ineffective assistance of trial counsel. And while his Ford claim is unexhausted in state court, it is not procedurally defaulted and, as such, is not subject to any of the exceptions to the procedural default rule, including the one recognized in Martinez.

10

An unexhausted claim is not procedurally defaulted unless it is evident that any future attempts at exhaustion would be futile due to the existence of a state procedural bar. Bailey v. Nagle, 172 F.3d 1299, 1303, 1305 (11th Cir. 1999). There is no state procedural rule preventing Gore from raising his Ford claim in state court. To the contrary, Florida Rule 3.811 creates a specific mechanism through which state death-row inmates can challenge in state court their competency to be executed, and the Florida Supreme Court has specifically stated that there is no filing deadline for bringing such a claim. See Fla. R. Crim. P. 3.811(d); Provenzano v. State, 751 So. 2d 37, 40 (Fla. 1999) (acknowledging that Rule 3.811 "does not contain a timetable for filing"). The district court in this case found that the Florida courts would not refuse to hear Gore's Ford claim based on a procedural bar, and the State has assured us that there is nothing in Florida law to suggest that the state courts would refuse to consider the merits of a Rule 3.811 motion. Gore does not contend that his Ford claim is procedurally barred and instead concedes in his brief to us that "[a]ny conclusion that a state procedural bar would be applied to a Rule 3.811 motion filed at this time would be speculative." App. Br. at 46.

Moreover, although the Supreme Court has recognized several exceptions to the judicially-created procedural bar doctrine, see, e.g., Wainwright v. Sykes, 433 U.S. 72, 81–88, 97 S.Ct. 2497, 2503–07 (1977) (creating an exception to the

11

procedural default rule when the petitioner can show cause for the default and prejudice from it), the Court has not recognized any equitable exceptions to the statutory bars on habeas petitions when the petitioner does not make a "credible showing" of actual innocence. See McQuiggin v. Perkins, — U.S. —, 133 S.Ct. 1924, 1931, 1933 (2013). The Supreme Court's most recent decision on the matter, McQuiggin, reaffirmed that principle, holding that there is an "equitable exception" to the statute of limitations applicable to habeas claims, 28 U.S.C. § 2244(d), but only when the petitioner presents new evidence that "shows it is more likely than not that no reasonable juror would have convicted the petitioner." Id. at 1931, 1933 (alteration and quotation marks omitted). The Court's opinion expressly limited its holding to that situation, stating that "AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made." Id. at 1933. Gore does not claim actual innocence and the exhaustion statute does not provide for the exception that Gore asks us to create. McQuiggin reaffirms that in these circumstances we lack the authority to rewrite the statute and create an exception that Congress did not enact.

Because Gore's claim is not procedurally barred and it does not raise an allegation of ineffective assistance of trial counsel, Martinez by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b). Unless and until the Supreme Court overrules the limitations it placed on

12

its Martinez decision, we are bound to respect and apply them.  Because the plain meaning and obvious import of those explicit limitations are not debatable among jurists of reason, Gore has not made the required showing for a COA, regardless of the merits or lack of merit of his underlying claim.  The district court should not have granted a COA on the Martinez/exhaustion issue.  See Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) (holding that a COA should issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").  The sole issue presented in this appeal is clearly foreclosed by statute, 28 U.S.C. § 2254(b)(1), and authoritative decisions. See 11th Cir. R. 22-4(7). As for the State's motion to vacate the COA, see Clisby v. Alabama, 52 F.3d 905, 906 n.1 (11th Cir. 1995).

The district court's judgment dismissing without prejudice Gore's petition for a writ of habeas corpus is AFFIRMED.  The State's motion to vacate the certificate of appealability is DENIED AS MOOT.  The stay of execution previously entered by this Court is VACATED.  The Petitioner's motion for a stay of execution is DENIED.

13